# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| AMY JO GEWIN | * | CIVIL ACTION NO.  10-1008 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

On October 24, 2007, Amy Gewin protectively filed the instant application for Title II Disability Insurance Benefits.  (Tr.  87-89, 99).  She alleged disability as of September 1, 2005, because of multiple sclerosis.  (Tr. 99, 103).  The claim was denied at the initial stage of the administrative process.  (Tr. 44-49).  Thereafter, Gewin requested and received a January 5, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 18-43).  However, in a May 29, 2009, written decision, the ALJ determined that Gewin was not disabled under the Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a waitress, a rental clerk, a retail sales clerk, an insurance customer sales representative, and bank teller.  (Tr. 6-15).  Gewin appealed the adverse decision to the Appeals Council.  On

April 19, 2010, however, the Appeals Council denied Gewin's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 22, 2010, Gewin sought review before this court. As broadly re-categorized by the court, she alleges the following errors,

(1) the ALJ's Step Three determination is not supported by substantial evidence; and

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Gewin had not engaged in substantial gainful activity during the relevant period. (Tr. 11). At Step Two, he found that Gewin suffers severe impairments of multiple sclerosis and urinary incontinence. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 11-12).

Plaintiff contends that the ALJ failed to properly evaluate whether her impairment met the listing for multiple sclerosis, *i.e.* 20 C.F.R. Subpart P, App. 1, Section 11.09. The ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42

U.S.C. § 405(b)(1)). Nonetheless, the ALJ's failure to do so does not require remand unless the claimant's "substantial rights" are affected. *Id.*[1] A claimant's substantial rights are affected at Step Three when she demonstrates that she meets, or at least appears to meet, the requirements for a listing. *See Audler, supra*.

Plaintiff contends that her impairment meets the listing for multiple sclerosis. The relevant section provides:

> 11.09. Multiple sclerosis. With: . . .
>
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. Subpart P, App. 1, Section 11.09C.

To establish that a claimant's injuries meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).[2] An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

The instant ALJ considered whether Williams' impairment met or equaled Listing 11.09. (Tr. 11-12). However, he resolved the Step Three inquiry by summarily concluding that

---

[1] In other words, the ALJ's error may be harmless. *Audler, supra*. (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)).

[2] In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c).

plaintiff's impairments did not meet or equal a listing. *Id*. He added that "no examining or non-examining physician has noted that Ms. Gewin's impairments equal any of the listed impairments." *Id*. This summation of the opinion evidence, however, is incorrect. Plaintiff's treating neurologist, Ruth Fredericks, M.D., completed a medical source statement indicating that Gewin suffered "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination." (Tr. 285). If credited, Dr. Fredericks' opinion would support a finding that plaintiff's multiple sclerosis was of listing level severity.

To be sure, the record is far from uniform. *See e.g.*, Tr. 212-215. However, the ALJ did not weigh or otherwise explain his basis for resolving the conflicting evidence against Gewin.[3] The ALJ's failure to adequately (and accurately) discuss the evidence and explain the basis for his Step Three findings is an error that affects plaintiff's "substantial rights" and requires remand. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

## II. Residual Functional Capacity

The ALJ next determined that Gewin retained the residual functional capacity to perform light work. (Tr. 12).[4] In so deciding, the ALJ discounted Gewin's testimony and the assessment

---

[3] In his discussion of plaintiff's residual functional capacity, the ALJ stated that he assigned no weight to Dr. Fredericks' opinion regarding plaintiff's limitations of functioning because it was inconsistent with the consultative examination, and with plaintiff's own testimony. (Tr. 14). However, the ALJ did not address that portion of Dr. Fredericks' opinion that is directly pertinent to the Step Three inquiry.

[4] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

of her treating neurologist, Ruth Fredericks, M.D. Instead, he assigned "great weight" to the findings of the consultative physician, Bruce Torrance, M.D.

According to the record, Dr. Fredericks saw Gewin approximately seven times between February 2007 and July 2009. (Tr. 285-297). In support of plaintiff's disability claim, Dr. Fredericks completed a medical source statement for multiple sclerosis on December 22, 2008, wherein she indicated that Gewin could work one hour per day; stand for 15 minutes for a total of 60 minutes per day; occasionally lift ten pounds, frequently lift five pounds, and occasionally use her arms. (Tr. 285). At the other end of the spectrum, following a one-time consultative examination, Bruce Torrance, M.D., opined that although Gewin suffered from multiple sclerosis, "at the present time," during a period of remission, she did not exhibit any limitation of function. (Tr. 253-256).

The ALJ's residual functional capacity assessment was greatly influenced by the essentially benign findings of the consultative examiner, who found no limitation of function, "at the present time." Indeed, plaintiff does not contest that Dr. Torrance's examination provides substantial evidence to support the exertional limitations of her multiple sclerosis – when in remission. Dr. Torrance, however, did not examine Gewin during one of her exacerbations. Moreover, there is no indication in the record that Dr. Torrance is even a neurologist. If he is not, then the ALJ's decision transgresses, without explanation, the maxim that the opinions of specialists are generally accorded greater weight than those of non-specialists. *Moore v.*

---

> leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

*Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

The court further observes that the ALJ's decision failed to follow the Commissioner's regulation that for impairments such as multiple sclerosis, "consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals." 20 C.F.R. Subpart P, App. 1, Section 11.00D. Further, "[m]ost cases of MS involve intermittent periods of symptoms and signs (exacerbation) followed by a period of improvement (remission). Excerbations [sic] vary in frequency, duration, character and severity. Remissions similiarly [sic] vary in duration and in the extent of improvement." *See* Program Operations Manual System ("POMS") DI 24580.015 EVALUATION OF MULTIPLE SCLEROSIS (MS). In other words, multiple sclerosis, as experienced by plaintiff, presents the type of impairment that waxes and wanes in its manifestation of disabling symptoms. Under these circumstances, the ALJ is compelled to make a separate finding that the claimant is able to maintain employment. *Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002).

Accordingly, upon remand, the ALJ should obtain medical evidence to support a determination regarding the frequency and duration of plaintiff's exacerbations, as well as the severity of her symptoms (i.e. limitations of functioning) during these periods.[5] This may include the need to obtain a consultative examination by a neurologist, who also can review plaintiff's medical records, and issue an opinion regarding the effects, frequency, and duration of plaintiff's exacerbations throughout the relevant period.[6] The consultative neurologist further should

---

[5] While the existing record does contain some medical evidence documenting Gewin's impairment during an exacerbation, (Tr. 229, 271-273), there is no indication that these 2006 treatment records consistently document her symptoms over the several years at issue.

[6] It may be necessary to schedule the examination while plaintiff is experiencing an exacerbation of symptoms.

address whether plaintiff's impairments are of listing-level severity.[7] Finally, the ALJ should obtain medical evidence that addresses whether plaintiff's urinary incontinence imposes any limitation of functioning – *e.g.*, the need for, and frequency of unscheduled restroom breaks and proximity to a restroom. Of course, if the opinions of the consultative neurologist and plaintiff's treating neurologist do not coincide, and the ALJ resolves this conflict in favor of the consultative specialist, then the ALJ's determination must be supported by good cause. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

## Conclusion

 For the reasons assigned above,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[7] According to the Commissioner, "an individual who has had two or more severe exacerbations in a year, which prevent any work for more than 1 month," is deemed to meet the listing for multiple sclerosis. POMS, DI 24580.015 EVALUATION OF MULTIPLE SCLEROSIS (MS).

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 3rd day of August 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE